## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

COLLEEN MARIE BROADDUS,

        Plaintiff,

        v.

KILOLO KIJAKAZI,[1] Acting
Commissioner of Social Security,

        Defendant.

CIVIL ACTION NO. 3:20-cv-01418

(SAPORITO, M.J.)

## <u>MEMORANDUM</u>

In this matter, the plaintiff, Colleen Marie Broaddus, seeks judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits, pursuant to 42 U.S.C. § 405(g). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She has been automatically substituted in place of the original defendant, Andrew Saul. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The caption in this case is amended to reflect this change.

## I.   BACKGROUND

On September 15, 2017, Broaddus protectively filed a claim for disability insurance benefits, asserting a disability onset date of April 15, 2016. The claim was initially denied by state agency reviewers on May 10, 2018. The plaintiff then requested an administrative hearing.

A hearing was subsequently held on June 6, 2019, before an administrative law judge, Susan L. Torres (the "ALJ"). In addition to the plaintiff herself,[2] the ALJ received testimony from an impartial vocational expert, Brian Bierley. The plaintiff was represented by counsel at the hearing.

On July 17, 2019, the ALJ denied Broaddus's application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Broaddus was not disabled under the Social Security Act. *See generally Myers v. Berryhill*,

---

[2] The plaintiff's brief includes a representation by counsel that Broaddus "was unable to appear before the [ALJ] assigned to this matter." (Doc. 21, at 8.) Counsel is clearly mistaken. The hearing transcript expressly states that Broaddus herself "appeared in person" before the ALJ at that hearing. (Tr. 53.) She provided extensive testimony, under oath. (Tr. 55–77.) Moreover, she was accompanied by counsel of record, who also represented her in the underlying administrative proceedings. (Tr. 53.)

373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). At step one, the ALJ found that Broaddus had not engaged in substantial gainful activity since April 15, 2016, her alleged disability onset date. At step two, the ALJ found that Broaddus had the severe impairments of: degenerative disc disease; right lower extremity radiculopathy; sinusitis / mild intermittent asthma; and obesity. At step three, the ALJ found that Broaddus did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Between steps three and four of the sequential evaluation process, the ALJ assessed Broaddus's residual functional capacity ("RFC"). *See generally id.* at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Broaddus had the RFC to perform "sedentary work" as defined in 20 C.F.R. § 404.1567(a),[3] with the following limitations:

> [T]he claimant is limited to occasional climbing of

---

[3] The Social Security regulations define "sedentary work" as a job that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a).

> ramps and stairs and never climbing ladders, ropes, or
> scaffolds. The claimant may occasionally balance,
> stoop, kneel, crouch, crawl, and push or pull with the
> right lower extremity. The claimant requires the use of
> a cane in the left non-dominant hand to stand or walk.
> Within the workplace, the claimant must avoid
> concentrated exposure to extreme cold, wetness,
> humidity, fumes, odors, dust, gases, poor ventilation,
> and hazards such as unprotected heights and moving
> machinery.

(Tr. 15.)

In making these factual findings regarding Broaddus's RFC, the ALJ considered her symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. § 404.1529; Soc. Sec. Ruling 16-3p, 2017 WL 5180304 (revised Oct. 25, 2017). The ALJ also considered and articulated how persuasive she found the medical opinions and prior administrative medical findings of record. *See generally* 20 C.F.R. § 404.1520c.

At step four, based on this RFC and on testimony by the vocational expert, the ALJ concluded that Broaddus was unable to perform her past relevant work as actually and generally performed.

At step five, the ALJ concluded that Broaddus was capable of performing other work that exists in significant numbers in the national

economy. Based on her age, education, work experience, and RFC, and based on testimony by the vocational expert, the ALJ concluded that Broaddus was capable of performing the requirements of representative occupations such as final assembler, DOT # 713.687-018, inspector, DOT # 669.687-014, or table worker, DOT # 739.687-182. Based on this finding, the ALJ concluded that Broaddus was not disabled for Social Security purposes.

The plaintiff sought further administrative review of her claims by the Appeals Council, but her request was denied on July 22, 2020, making the ALJ's July 2019 decision the final decision of the Commissioner subject to judicial review by this court.

Broaddus timely filed her complaint in this court on August 11, 2020. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II.   DISCUSSION

Under the Social Security Act, the question before this Court is not whether Broaddus is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was

reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits and supplemental security income administrative decisions).

Broaddus asserts on appeal that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ found certain of her impairments "not severe" at step two of the five-step sequential evaluation process, despite compelling evidence to the contrary; (2) the ALJ failed to properly evaluate prior administrative findings, including the medical opinions of a non-examining state agency medical consultant; (3) the ALJ failed to properly evaluate the medical opinions of her treating physician and physician assistant; and (4) the ALJ failed to properly evaluate the medical opinions of an examining neurologist.[4]

_____

[4] The plaintiff's brief articulated three conclusory, extremely general claims of error: (1) the ALJ failed to consider the limitations in the RFC from those of the impairments which the ALJ found to be severe; (2) the ALJ failed to consider the limitations in the RFC from those of the impairments which the ALJ found to be non-severe, or never mentioned; and (3) the ALJ failed to give proper *weight* to the medical opinions of her treating physician assistant, her treating physician, and an examining neurologist. Although not clearly articulated by plaintiff's counsel, a close
*(continued on next page)*

## A. Step Two Determination

The plaintiff appears to contend that the ALJ erred in finding that various of Broaddus's medical conditions were not severe impairments.

At step two, the ALJ found that Broaddus had several severe impairments including: degenerative disc disease; right lower extremity radiculopathy; sinusitis / mild intermittent asthma; and obesity. The ALJ then proceeded on to step three of the five-step sequential evaluation process.

At step two, a claimant bears the burden of proving that he suffers from "a medically severe impairment or combination of impairments." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). But the step-two inquiry is merely "a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). "[T]he analysis at step two is wholly independent of the analysis at later steps. . . . [N]ot finding certain impairments severe at step two does not affect the ultimate disability determination." *Alvarado v. Colvin*, 147 F. Supp. 3d 297, 311 (E.D. Pa. 2015); *see also Orr v. Comm'r Soc. Sec.*, 805

reading of the plaintiff's brief reveals that these very generalized grievances rest on the specific claims of error we have articulated above.

Fed. App'x 85, 88 (3d Cir. 2020) ("[B]ecause the ALJ progressed to a later step, any error at Step Two would not alter that remainder of the five-step process, much less the overall outcome."); *Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019) (per curiam) ("Step two is a threshold inquiry; so long as one of a claimant's limitations is found to be severe, error at that step is harmless."); *Salles v. Comm'r of Soc. Sec.*, 229 Fed. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [the claimant's] favor at Step Two, even if he had erroneously concluded that some other impairments were nonsevere, any error was harmless.").

Here, the ALJ found in Broaddus's favor at step two, finding that she had several other severe impairments, and then proceeded on to step three of the five-step sequential evaluation process. Thus, any error with respect to evaluation of the severity of any other impairments at step two was harmless and provides "no valid basis for remand." *See Orr*, 805 Fed. App'x at 88.

## B. Medical Opinions and Prior Administrative Findings

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in her evaluation of conflicting medical opinions and prior administrative findings presented

in the administrative proceedings below. As a preface, we note the well-established principle that, in evaluating the medical opinion evidence of record, an "ALJ is not only entitled, but required to choose between" conflicting medical opinions. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [an ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). Moreover, "[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Ultimately, to reverse the ALJ's findings and decision, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Immigration & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *see also Smith v. Chater*, 99 F.3d 780, 782 & N.3 (6th Cir. 1996) (citing *Elias-Zacarias* in the context of social security disability benefits); *Hert v. Barnhart*, 234 F. Supp. 2d 832, 837 (N.D. Ill. 2002) ("The court may reverse the Commissioner's decision only if the evidence 'compels' reversal, not merely because the evidence

supports a contrary decision.") (citing *Elias-Zacarias*).

Here, the plaintiff originally filed her administrative claim for benefits in September 2017. Thus, a relatively new regulatory framework governing the evaluation of medical opinion evidence applies to this case.[5]

"The new regulations have been described as a 'paradigm shift' in the way medical opinions are evaluated." *Knittle v. Kijakazi*, Civil No.

---

[5] We note that counsel for the plaintiff has mistakenly premised his entire argument on this point—that the opinions of her treating physician and treating physician assistant were entitled to controlling weight, or at least great weight—on the old regulations, which no longer apply. This is not the only case in which this same attorney has made this same, fundamental error. *See, e.g.*, Pl.'s Br., *Rivera v. Kijakazi*, Case No. 3:21-cv-01574 (M.D. Pa. filed Feb. 14, 2022) (examining physician), ECF No. 12; Pl.'s Br., *Gonzalez v. Kijakazi*, Case No. 3:21-cv-00012 (M.D. Pa. filed Aug. 9, 2021) (treating physician), ECF No. 15; Pl.'s Br., *Torres v. Kijakazi*, Case No. 3:20-cv-02049 (M.D. Pa. filed July 1, 2021) (treating physician), ECF No. 15; Pl.'s Br., *Martinez v. Kijakazi*, Case No. 3:20-cv-01550 (M.D. Pa. filed June 7, 2021) (treating physician), ECF No. 19. Indeed, even under the old regulations, a physician assistant's opinion would never be entitled to controlling weight, as a physician assistant was not considered an "acceptable medical source." *See* 20 C.F.R. § 404.1527(c)(2) (explaining requirements for a treating source's medical opinion to be assigned "controlling weight"); *id.* § 404.1527(a)(1) (limiting "medical opinions" to "statements from acceptable medical sources"); *id.* § 404.1502(a) (defining "acceptable medical source" to include licensed physician assistants only with respect to claims filed under the *new* regulations). In any event, we encourage counsel to revisit and revise his legal boilerplate on this issue before filing any future briefs.

1:20-CV-00945, 2021 WL 5918706, at *4 (M.D. Pa. Dec. 15, 2021). "Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Densberger v. Saul*, Civil No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021). Under this prior regulatory scheme, the Social Security Administration "followed the 'treating physician rule,' which required the agency to give controlling weight to a treating source's opinion, so long as it was 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and not 'inconsistent with the other substantial evidence' in the record." *Michelle K. v. Comm'r of Soc. Sec.*, 527 F. Supp. 3d 476, 481 (W.D. Pa. 2021). However, the regulations governing the evaluation of medical evidence were amended and the treating physician rule was eliminated effective March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017); *see also Densberger*, 202 WL 1172982, at *7–*8; *Michelle K.*, 527 F. Supp. 3d at 481. "The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more

holistic analysis." *Densberger*, 2021 WL 1172982, at *7.

Under these new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520(a). "Rather than assigning weight to medical opinions, [an ALJ] will articulate 'how persuasive' he or she finds the medical opinions." *Knittle*, 2021 WL 5918706, at *4; *see also* 20 C.F.R. § 404.1520. If a medical source provides one or more medical opinions, the agency will consider those medical opinions from that medical source together using the following factors: "(1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that 'tend to support or contradict a medical opinion or prior administrative medical finding.'" *Michelle K.*, 527 F. Supp. 3d at 481; *see also* 20 C.F.R. § 404.1520c(a); *Densberger*, 2021 WL 1172982, at *8. Under the new regulations, "[t]he two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,'

which are the 'same factors' that formed the foundation of the treating source rule." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. § 404.1520c(b)(2); *Michelle K.*, 527 F. Supp. 3d at 481; *compare* 20 C.F.R. § 404.1520c(c)(1) (supportability), and *id.* § 404.1520c(c)(2) (consistency), *with id.* § 404.1527(c)(3) (supportability), and *id.* § 404.1527(c)(4) (consistency).[6] An ALJ is specifically required to address these two factors in his or her decision. *See* 20 C.F.R. § 404.1520(c)(b)(2); *see also Densberger*, 2021 1172982, at *8; *Michelle K.*, 527 F. Supp. 3d at 482. "The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K.*, 527 F. Supp. 3d at 482; *see also* 20 C.F.R. § 404.1520c(b)(2); *Densberger*, 2021 WL 1172982, at *8. "However, when the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the

---

[6] With respect to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). With respect to consistency, the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

ALJ must articulate how he or she considered [the remaining] factors . . . ." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. § 404.1520c(b)(3); *Michelle K.*, 527 F. Supp. 3d at 482.

### 1. Prior Administrative Findings

The ALJ considered the prior administrative findings in this case, finding them to be "persuasive." These prior administrative findings included the opinions of a state agency medical consultant, Wadicar Nugent, M.D., who had found the claimant capable of performing sedentary work with some postural and environmental limitations. Based on his review of Broaddus's medical records, Dr. Nugent found that Broaddus was capable of lifting or carrying up to 20 pounds occasionally and up to 10 pounds frequently. Dr. Nugent found that Broaddus was capable of standing or walking up to two hours per workday and sitting up to six hours per workday. He found that Broaddus was capable of occasional balancing, stooping, kneeling, crouching, crawling, or climbing of ramps or stairs, but no climbing of ladders, ropes, or scaffolds. Dr. Nugent found that Broaddus was required to avoid even moderate exposure to hazards such as moving machinery or unprotected heights. In evaluating the opinions of Dr. Nugent, the ALJ found that:

The undersigned finds this opinion to be persuasive as it is supported by the doctor's review of the medical evidence available to him at the time of the rendering of his opinion. It is also consistent with the remainder of the medical evidence, which indicates that the claimant exhibited 5/5 strength in the lower left extremity and 4/5 on the right. She demonstrated normal muscle tone and bulk bilaterally. When examined, her coordination and gain were normal[,] and she reported that she was doing well for the most part. However, the undersigned has also determined that the claimant should be limited to the use of a cane in the left non-dominant hand to stand or walk due to her issues with stability, and because of her mild intermittent asthma, the claimant must avoid concentrated exposure to extreme cold, wetness, humidity, fumes, odors, dust, gases, [or] poor ventilation.

(Tr. 20 (citations omitted).)

The plaintiff appears to object to this evaluation of the state agency medical and psychological consultants' findings and opinions based on the fact that the consultant did not actually examine Broaddus in person. But the medical opinion of a non-examining medical source, such as a state agency medical or psychological consultant, may serve as substantial evidence when the opinion is consistent with other medical evidence in the record. *See Nichols v. Comm'r of Soc. Sec.*, 404 Fed. App'x 701, 704–05 (3d Cir. 2010); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *My-Lein L. v. Comm'r of Soc. Sec.*, 551 F. Supp. 3d 100, 107

(W.D.N.Y. 2021); *Ortiz v. Comm'r of Soc. Sec.*, 309 F. Supp. 3d 189, 205 (S.D.N.Y. 2018).

Accordingly, we find the ALJ's evaluation of the prior administrative findings concerning the plaintiff's limitations, including the medical opinions of the state agency medical consultant, Dr. Nugent, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### 2. *Opinions of Examining Physical Therapist*

On June 13, 2018, a physical therapist, Ellen Disantis, PT, DPT, NCS, conducted a physical work performance evaluation of Broaddus.[7] Over the course of four hours, Broaddus performed a series of 18 tasks, the results of which formed the basis of Disantis's opinion regarding Broaddus's functional capacity. Disantis observed that, on half of the tasks, Broaddus "self-limited" her participation, exhibiting "sub-

---

[7] We note that, although characterized by the ALJ as "the claimant's own medical provider," suggesting a treating relationship, the physical therapist's examination notes indicate that this was a one-time evaluation on referral from Broaddus's treating neurologist. (Tr. 606–07, 617.) Two years prior to this evaluation, Broaddus had a brief treatment relationship with the same physical therapy clinic, but not the same physical therapist. (Tr. 605, 608–16.) Following a referral from a treating physician assistant, Broaddus began a twelve-visit, four-week long physical therapy program, but she quit after two visits. (*Id.*)

maximal" effort, and that there was "significant evidence of low effort and inconsistent behavior." Disantis noted that self-limiting behavior in excess of one-third of the tasks "significantly exceeded normal limits." She noted that Broaddus reportedly self-limited due to pain, but a corresponding heartrate increase was not observed. Disantis noted that she had observed multiple other clinical inconsistencies, in which Broaddus exhibited greater limitations during testing than when she was unaware that she was being observed. Based on Broaddus's performance, Disantis opined that she was capable of maintaining a sedentary level of work for a full 8-hour workday and 40-hours workweek. (Tr. 618–28; *see also* Tr. 597–603 (abridged copy of evaluation report).)

Upon review, the ALJ found that this opinion was "persuasive" because

> it is supported by the therapist's examination, testing, and observation of the claimant. It is also consistent with the remainder of the medical evidence, which indicates that the claimant was not taking any medications for her impairments. When examined, she exhibited 5/5 strength in the lower left extremity and 4/5 on the right. She demonstrated normal muscle tone and bulk bilaterally. An MRI of the lumbar spine indicated only mild degenerative changes without evidence of significant neural compromise or osseous injury. An MRI of the thoracic spine was normal. A nerve conduction study indicated borderline right S1

> radiculopathy while the remainder of the test was
> within normal limits. There was no evidence of a
> peripheral neuropathy or peripheral nerve injury in
> the legs. She reported that she was doing well for the
> most part.

(Tr. 19 (citations omitted).)

The plaintiff has not articulated any specific challenge to the ALJ's evaluation of this medical opinion, but she nevertheless argues that the ALJ "improperly considered" the physical therapist's opinion. But here, the ALJ expressly articulated her consideration and findings on the supportability and consistency of the physical therapist's medical opinions.

Accordingly, we find the ALJ's evaluation of the medical opinions of examining physical therapist Disantis is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### 3. Treating Physician Assistant and Physician Opinions

On October 17, 2018, Broaddus's treating physician assistant, Hannah Miller, PA-C, completed a physical residual functional capacity questionnaire, which was co-signed by Broaddus's treating physician, David Heeter, DO. PA Miller and Dr. Heeter noted that Broaddus had

been a patient of their medical practice for two years. They reported a diagnosis of L3-L4 posterior disc bulge with a good prognosis. They reported her symptoms as including right leg pain and weakness, back pain, and gait changes. When asked to identify clinical findings and objective signs, they reported that, while EMG results were normal, an MRI showed an L3-L4 disc bulge. They noted that Broaddus was not currently on medication, but she was required to walk with a cane. When asked if she was a malingerer or if emotional factors contributed to the severity of her symptoms and functional limitations, they responded "unknown." Prior to setting out their medical opinions with respect to Broaddus's functional limitations, PA Miller and Dr. Heeter acknowledged that her impairments were *not* reasonably consistent with the symptoms and functional limitations described in their evaluation, noting that a functional capacity evaluation had been completed and inconsistencies had been noted.[8] They opined that Broaddus's experience of pain or other symptoms was severe enough to frequently interfere with her attention and concentration to perform even simple tasks.[9] They

---

[8] This appears to us to be a reference to the evaluation by examining physical therapist Disantis. This is what the ALJ concluded as well.

[9] The form defined "frequently" as 34% to 66% of workday.

opined that Broaddus was capable of performing only low-stress jobs. They opined that Broaddus was capable of sitting up to six hours per workday, provided she was allowed a five- to ten-minute break every hour, and she was capable of standing or walking for less than two hours per workday, with no more than one hour of uninterrupted sitting, no more than five minutes of standing at one time, and an at-will sit/stand/walk option. They further opined that Broaddus was required to take a break from work every hour. PA Miller and Dr. Heeter opined that Broaddus was capable of lifting or carrying up to 10 pounds, but only occasionally. They opined that she was subject to certain postural limitations: she could frequently look down, turn her head right or left, look up, or hold her head in a static position; she could only rarely twist or stoop; and she could never crouch, squat, or climb ladders or stairs. PA Miller and Dr. Heeter opined that Broaddus's impairments or treatment would cause her to be absent from work about one day per month, but her impairments would not affect her ability to concentrate, follow instructions, or use her hands. They opined that Broaddus's impairments would not cause her to miss work on a regular basis or to be "off task" for more than 15% of the day. (Tr. 780–85.)

Upon review, the ALJ found that these opinions were unpersuasive. In particular, the ALJ found that:

> [a]lthough it is supported by the doctor's and the physician assistant's examination of the claimant, it is inconsistent with the remainder of the medical evidence. They noted that the claimant's impairments were not reasonably consistent with the symptoms and functional limitations described in their evaluation and note that the functional capacity evaluation completed by Ellen Disantis observed inconsistencies in the claimant's physiological performance and reported limitations. There are other inconsistencies in the questionnaire. At one point, they indicate the claimant's experience of pain or other symptoms [is] severe enough to interfere with the claimant's attention and concentration. At another point, they deny that the claimant's impairments affect her ability to concentrate. The medical evidence indicates that the claimant was doing well for the most part. She was either not taking any medications for her impairments or she only took Tylenol. When examined, she exhibited 5/5 strength in the lower left extremity and 4/5 on the right. She demonstrated normal muscle tone and bulk bilaterally. An MRI of the lumbar spine indicated only mild degenerative changes without evidence of significant neural compromise or osseous injury. An MRI of the thoracic spine was normal.

(Tr. 19–20 (citations omitted).)

Here, the ALJ properly considered the medical evidence of record and the relevant factors of supportability and consistency. She expressly articulated the basis of her evaluation and her findings with respect to

the persuasiveness of these opinions as well.

Accordingly, we find the ALJ's evaluation of the opinions of treating physician assistant PA Miller and treating physician Dr. Heeter is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### 4. Independent Medical Examination Report

The plaintiff also argues that the ALJ erred in failing to assign any weight at all to the medical opinion of an examining board-certified neurologist, John B. Chawluk, M.D., FAAN.

On March 21, 2019, Dr. Chawluk performed an independent medical examination ("IME") of Broaddus, apparently in connection with civil litigation concerning the motor vehicle accident that appears to have originally caused the injuries that comprise her impairments. Dr. Chawluk noted his personal review of various MRI scans of Broaddus's brain, thoracic spine, cervical spine, and lumbar, together with his own findings, which were in agreement with the initial assessments of reviewing radiologists. He noted a normal EMG study as well. He recorded his examination findings and his ultimate diagnosis of complex regional pain syndrome type I of the right leg, muscular deconditioning

secondary to right leg pain, and symptom magnification (low back pain and right leg weakness), with a guarded prognosis. He recommended evaluation and treatment by a pain management specialist. He noted that treatment options might include "right lumbar sympathetic nerve blocks, right facet joint blocks, oral pharmacological interventions that have not been attempted already (for example medical cannabis), spinal cord stimulator, [or] ketamine infusions." Dr. Chawluk's IME report did not include any findings with respect to Broaddus's functional abilities or limitations. (Tr. 786–88.)

The plaintiff contends that the ALJ failed to properly evaluate the medical opinions stated by Dr. Chawluk in this IME report. But the IME report does not contain any such medical opinions. In the context of social security disability proceedings, "[a] medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in":

> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

(ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2) (defining "medical opinions"). But while Dr. Chawluk may be said to have provided an "opinion" in the colloquial sense, in the context of these disability benefits proceedings, his IME report is comprised of only his "judgments about the nature and severity of [Broaddus's] impairments, [her] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." *See id.* § 404.1513(a)(3) (defining "other medical evidence"). As such, the ALJ was not required to evaluate Dr. Chawluk's IME report as a medical opinion and articulate how persuasive she found it to be. Moreover, we note that the ALJ expressly considered and relied upon Dr. Chawluk's examination findings in the course of determining Broaddus's RFC. (*See* Tr. 18.)

Accordingly, we find the ALJ did not err with respect to her

consideration of the findings of examining neurologist Dr. Chawluk.

## III.   CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Broaddus was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, the Commissioner's decision denying disability benefits is **AFFIRMED**.

An appropriate Order follows.

Dated: April 12, 2022            *s/Joseph F. Saporito, Jr.*
                                 JOSEPH F. SAPORITO, JR.
                                 United States Magistrate Judge